Daniels, J.
The action was brought to recover for the price of malt sold and delivered by the plaintiffs to the defendant, and for commissions on the sale of malt syrup, and also for freight and charges paid out by the plaintiffs for the defendant. The claim set forth in the complaint as the plaintiffs’ causes of action were not denied by the answer, but that stated a counter-claim exceeding the amount of the plaintiffs’ demands. It was placed upon an alleged guaranty by which for a commission the plaintiffs were stated to have guaranteed the payment of the price of so much of the syrup as should be sold and delivered to' them, or in compliance with their orders.
The litigation in the action, as the reply denied the answer, depended wholly upon the evidence relating to the contract mentioned in the answer, and the quantity of syrup which had been delivered under it. It was not delivered wholly to the plaintiffs themselves, but in great part to other persons under orders alleged to have been received from them, by the defendant. How much as a matter of fact was so delivered in this manner to other persons was not directly proved, either by the evidence of the defendant, or of the other persons who were in his employment, and-this was a closely controverted feature of the litigation. Neither Noble, who was in charge of the defendant’s business, nor the defendant himself, could state to whom the syrup had been sent for which it was designed to charge the plaintiffs with liability for the price. An account was found at page 104 of the defendant’s ledger, which was relied upon as the statement of the shipments and sales, but this account was not proven so as to entitle it to be read in evidence against the plaintiffs, otherwise than by evidence that one of them looked over the book and substantially assented to the correctness of the entries contained on this page. That was, however, denied, and evidence was given tending to establish the fact that this page did not contain the account of the business transactions of the defendant, as they had taken place. And it appeared that it was made up from other entries, in part, on leaves which had been taken from the book containing them. It was, however, stated that the entries had been correctly transcribed, and if they had, then those which were produced on the trial were entitled to have the same effect that they would have had if they had been the first entries made of these articles. But this evidence of the examination and substantial assent to the account appearing upon the book was so sharply con *118 troverted on the part of the plaintiffs, that the referee might very well have finally considered the account not to have been proven, and for that reason to reject it as evidence in the' case. It certainly was in no sense decisive as against the plaintiffs, and for the purpose of further proving the correctness of the charges, evidence was offered to prove that accounts of the articles delivered had been transferred from the defendant to the plaintiffs. This was objected to by them on the ground that parole evidence could not be given of the contents of these papers, and'that they were themselves the best evidence, or at least that copies of them should be made the subject of proof. This was overruled by the referee, and to his decision the plaintiffs excepted. Under this ruling evidence was received from the defendant’s witness Noble, stating that accounts had been rendered to the plaintiffs of the defendant’s transactions under the alleged contract with them, including deliveries of syrup from the eighth of March, 1881, until the twelfth of the following month of December, and in that manner tending directly to establish the charges made by the defendant against the plaintiffs for the syrup alleged to have been delivered pursuant to their agreement. This evidence violated a very plain rule of law, requiring the contents of written instruments to be established by the instruments themselves when they may be attainable upon the trial, and only allowing parole or secondary evidence, of such contents, after notice shall be given to the other party to produce the documents, the contents of which it may be material to prove.
The ruling of the referee has been justified by the defendant’s counsel upon the ground that Merrill, one of the plaintiffs, had in the course of his evidence been requested to produce his accounts and refused so to do. But what transpired between the defendant’s counsel and this party did not present such a refusal. The testimony which was obtained from this plaintiff related to letters which were asserted to have been received by the plaintiffs from the defendant, and not to accounts. During his examination Merrill had produced such letters and it was concerning the letters that he was interrogated. The question was asked: “When I asked you on your cross-examination to produce letters from Mr. Belden, you stated that you had none with you ? ”
A. “I did’nt have them, sir.”
Q. “How is it that you now produced them on your redirect .examination? ’ ’
A. “ They came into the room since.” .
Q. “Then, please, produethem?”
To this question the plaintiff’s counsel interposed and *119 stated that the witness declined to produce the letters. The question was then asked: “Please, produce all letters, papers and accounts in any way relating to the matters in controversy in this action which you have at any time received from Charles D. Belden or Robert R. Noble.” The plaintiff’s counsel then directed the witness not to produce them and the witness made no answer. Then the question was asked: “Will you now produce those letters, some of which I see are on the table before us? ”
A. “Those have been produced and put in.”
Q. “ Will you produce those letters that now lie on the table?”
A. “ That is for my lawyer to do what he has a mind to with those.”
Q. “Have you any other letters from Charles D. Belden <or Robert R. Noble, than those now lying on the table ? ”
A. “Yes, sir.”
Q. “ Have you them present in this room ? ”
A. “I think some of them are—I know they are.”
This examination which there ended, it will be seen related wholly to the letters. Accounts were mentioned in one question, but there was no evidence given to prove that any one of the accounts afterwards stated to have been sent to the plaintiffs was in the possession of this witness, or in any manner present at the trial. And this examination for this reason did not open the way through which secondary evidence of the accounts themselves could be legally received by the referee. To have permitted such testimony to be taken it was at least necessary that it should have been made to appear that the witness Merrill, or the counsel, had these accounts in court or under their control, so that they could be produed in compliance with a request for their production, and that such a request was made by or on behalf of the defendant.
In this respect there was a complete omission of the necessary testimony. And as the evidence stood when it was proposed to prove that the accounts had been transmitted to the plaintiffs, the defendant was not in a condition to give evidence of their contents. If they had-been so transmitted and retained without objection, the fact would have been decisive evidence in favor of the defendant. For it might be inferred from it that the plaintiffs had assented to the correctness of the items stated in the accounts. But without proof that the plaintiffs had been given a reasonable notice to produce the accounts, or that they were present at the trial, the defendant was not in a condition to give the evidence which the referee concluded to, and actually did receive.
Accounts and letters which had been received by the *120 plaintiffs from the defendant and Noble, were produced and.given in evidence during the cross-examination of Noble-himself, and so far as that was done the ruling of the referee was corrected, but they did not include all the accounts, the contents of which the referee allowed to be proved under his ruling, but they related only to a part of the sales made between June and December, 1881, while, under the ruling of the referee, sales made in the preceding month of April were allowed to be maintained by proof of transmitted accounts. As to those sales, or deliveries, the evidence subsequently given in the case did not correct this, ruling of the referee, for it did not include them.
This evidence had a material bearing upon the controversy between these parties and it related to charges which were probably allowed by the referee to the defendant in the final disposition of the case. There were also other charges made by the defendant against the plaintiff in the latter part of the year included in the evidence received by the referee, for which neither accounts nor letters were produced during the subsequent progress of the trial.
The ruling of the referee, excluding an answer to the question for what the sum of $500, paid by the defendant in September, 1881, had been paid, was finally corrected by the witness stating that it was on malt delivered in July, 1881. As to that there is no difficulty in the case.
The defendant testified that he knew of his own knowledge that bills for all the syrup charged for in the bill of particulars in the month of July, had been made out and were in Mr. Merrill’s possession. He was thereupon asked, “Was there anything upon those bills, that you remember, which would indicate to whom that syrup was shipped or by whom it was received ? ” This was objected to as attempting to prove a written instrument, and the objection was sustained and the plaintiffs excepted. How the referee-could consistently exclude this proof, when proof of the bills themselves had been received, seems to be unaccountable. If the evidence of the defendant concerning the bills, was to be of the slightest weight in the case, the plaintiffs, had the right to interrogate the witness as to their contents.
But without pursuing this subject any further it is sufficient to say that oral evidence of the contents of the bills, which were not afterwards produced during the trial, was. erroneously received. And as this related to the-important and contested part of the litigation, the error can be no-otherwise corrected than by reversing the judgment and directing a new trial, with costs to the appellant to abide the event before another referee.
Van Brunt, P. J., and Brady, J., concur.